IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WALTER A. ALEMAÑY RAMÍREZ,

**Plaintiff,**

**v.**

ICF INCORPORATED, LLC,

**Defendant.**

**Civil No.** 24-1033 (FAB)

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Plaintiff Walter A. Alemañy-Ramírez ("Alemañy" or "plaintiff") brought this employment discrimination action against ICF Incorporated, LLC ("ICF" or "defendant"). (Docket No. 1.) Alemañy brings claims under P.R. Laws Ann. tit. 29, § 185a *et seq.* ("Law 80"), P.R. Laws Ann. tit. 29, § 146 *et seq.* ("Law 100"), and P.R. Laws Ann. tit. 29, § 194 *et seq.* ("Law 115"). Before the Court are Alemañy's objections to the Report and Recommendation ("R&R") issued by Magistrate Judge Marcos E. López (the "magistrate judge") (Docket No. 80), recommending that ICF's motion for summary judgment be granted. (Docket No. 47.) For the following reasons, the Court **ADOPTS** the R&R and **GRANTS** ICF's motion for summary judgment.

## I. Background

The magistrate judge's R&R describes the facts of the case in detail. See Docket No. 80 at pp. 4-11. The following is a summary of the facts pertinent to this opinion and order.

ICF is a limited liability company organized under the laws of Delaware, with a business domicile in Virginia, and authorized to do business in Puerto Rico. (Docket No. 59 at p. 3; Docket No. 80 at p. 4.) In the aftermath of Hurricane María, ICF contracted with Puerto Rico's Central Office for Recovery, Reconstruction, and Resilience ("COR3") to manage FEMA-funded projects and serve as grant managers within Puerto Rico. (Docket No. 59 at pp. 3-4; Docket No. 80 at p. 4.) Alemañy started working for ICF in early 2019, when he was 62 years old, focusing on COR3-related matters. (Docket No. 59 at pp. 5-6; Docket No. 80 at pp. 5, 34.) He was originally stationed in Puerto Rico full-time, but after the onset of the Covid-19 pandemic, he relocated to his home in Georgia and primarily worked remotely. (Docket No. 59 at pp. 10-12; Docket No. 80 at p. 5.) At this time, ICF ceased providing him with an apartment in Puerto Rico, opting instead to pay for hotels during his future work visits, and made adjustments to his tax withholding. (Docket No. 67-1 at pp. 13-15.) Over the next several years, Alemañy travelled to Puerto Rico frequently for work. He worked a total of 263 days from Puerto Rico in 2019, 90

days in 2020, 44 days in 2021, 107 days in 2022, and 23 days in 2023, for a total of 527 days.  See Docket No. 80 at pp. 17-18.

For most of his time at ICF, Alemañy received positive performance reviews from his supervisors.  (Docket No. 67-1 at p. 51; Docket No. 80 at p. 10.)  In early 2022, however, ICF management began observing delays and backlogs in areas assigned to Alemañy's supervision.  (Docket No. 48-2 at pp. 301-05; Docket No. 80 at p. 8.)  In September 2022, Alemañy was placed in a "rotation program" whereby he would be removed from the projects he was working on.  (Docket No. 58 at p. 18; Docket No. 67-1 at p. 31-33; Docket No. 80 at p. 8.)  He complained to ICF's human resources department about this move.  (Docket No. 67-1 at pp. 48-50.)  Around this time, one of his supervisors, Andrew LaVanway, apparently commented that Alemañy appeared "burned out."  (Docket No. 67-1 at pp. 48-49; Docket No. 80 at p. 23.)  By October 2022, he was not assigned to work on any project at ICF, and was replaced in his former role by an individual in his 60's named Fred Choi.  (Docket No. 67-1 at pp. 28-29, 34-35; Docket No. 80 at pp. 9-10.)  In May 2023, Alemañy was terminated from his employment at ICF.  (Docket No. 67-1 at p. 47; Docket No. 80 at pp. 10-11.)

## II. Standard of Review

### A. Magistrate Judge's Report and Recommendation

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. Loc. Rule 72(d); 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F. Supp. 2d 262, 264 (D.P.R. 2010) (Domínguez, J.); Sylva v. Culebra Dive Shop, 389 F. Supp. 2d 189, 191-92 (D.P.R. 2005) (Vélez-Rivé, M.J.) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden v. Sec'y of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987). In conducting its review, a court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(a)(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Álamo Rodríguez v. Pfizer Pharms., Inc., 286 F. Supp. 2d 144, 146 (D.P.R.

2003) (Domínguez, J.).  The Court may accept those parts of the report and recommendation to which the parties do not object.  See Hernández-Mejías v. Gen. Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.) (citing Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp. 2d 114, 125-126 (D.R.I. 2004)).

   **B.   Summary Judgment Pursuant to Fed. R. Civ. P. 56**

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation."  Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted).  The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).  The movant must

identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden of proof on a particular issue, [he or] she [or it] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Tobin, 775 F.3d at 450-51. A court draws all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations. McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

Local Rule 56 governs the factual assertions made by both parties in the context of summary judgment. Loc. Rule 56; Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Cap. Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). The movant must

submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. R. 56(b).  The nonmovant must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. R. 56(c).  The movant may reply and admit, deny, or qualify the opponent's newly-stated facts in a separate statement and by reference to each numbered paragraph.  Loc. R. 56(d).  Facts which are properly supported "shall be deemed admitted unless properly controverted."  Loc. R. 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010).

**III. Discussion**

The magistrate judge recommends granting ICF's motion for summary judgment on two grounds.  First, he concludes that Laws 80, 100, and 115 do not apply to Alemañy's employment at ICF, and consequently, summary judgment for ICF on these causes of action should be granted.  See Docket No. 80 at pp. 11-19.  Second, the magistrate judge concludes that, even if these laws did apply, Alemañy fails to establish *prima facie* claims for discrimination, retaliation, and wrongful termination.  Id. at pp. 19-39. Alemañy objected to the magistrate judge's conclusions (Docket No. 82), and ICF responded.  (Docket No. 83.)

**A. Applicability of Puerto Rico Labor Laws**

After reviewing Alemañy's employment agreement and Puerto Rico case law, the magistrate judge found that Puerto Rico's labor laws do not apply to Alemañy's employment relationship with ICF. See Docket No. 80 at pp. 11-19. Alemañy objects to this conclusion. See Docket No. 82 at pp. 2-10. The Court agrees with the magistrate judge.

Whether or not Puerto Rico law applies to Alemañy's employment relationship with ICF is a choice-of-law question. "A federal court with diversity or supplemental jurisdiction applies state substantive law to state law claims." Malavé-Torres v. Cusido, 839 F. Supp. 2d 501, 505 (D.P.R. 2012) (McGiverin, M.J.) (citing Hoyos v. Telecorp Comm'ns, Inc., 488 F.3d 1, 5 (1st Cir. 2007)). "This includes the forum state's choice of law principles." Id. (citing Hartford Fire Ins. Co. v. CAN Ins. Co. (Europe), 633 F.3d 50, 54 n. 7 (1st Cir. 2011)). "Puerto Rico courts generally follow the Restatement (Second) of Conflict of Laws." Id. (citing Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del Caribe, Inc., 145 F.3d 463, 478-79 (1st Cir. 1998)). "Issues in contract are determined by the law chosen by the parties . . . and otherwise by the law selected in accordance with the rule of [Restatement (Second) of Conflict of Laws] § 188."

Restatement (Second) of Conflict of Laws, § 186 (Am. Law Inst. 1971).

The employment agreement between Alemañy and ICF contains a general choice-of-law clause favoring Virginia law. See Docket No. 48-2 at p. 19.  It also contains, however, the following carve-out for Puerto Rico workers' compensation and employment discrimination laws (i.e., Law 80, Law 100, and Law 115):

> During your assignment in Puerto Rico, you will be subject to the provisions of the Puerto Rico laws regarding only to income tax, workers' compensation and employment discrimination. Any other matter related to your assignment and this letter of assignment shall be governed by the laws of the Commonwealth of Virginia without regard to its conflict-of-law rules.
>
> Id. at p. 12.

The parties clearly intended Alemañy's employment relationship with ICF to be subject to Puerto Rico income tax, workers' compensation and employment discrimination laws "[d]uring [his] assignment in Puerto Rico."  Id.  And according to Puerto Rico choice of law rules, the law chosen by the parties in a contract is respected.  The issue is whether this clause continued to apply after Alemañy relocated to Georgia at the onset of the Covid-19 pandemic – in other words, whether Alemañy's "assignment in Puerto Rico" continued after he relocated to Georgia.

The magistrate judge concluded that it did not, reasoning that Alemañy was not "in" Puerto Rico because he worked from Puerto Rico less than half of the time.  The Court agrees with this conclusion.  On the one hand, Alemañy still carried out the same assigned duties under the employment agreement after the onset of the pandemic, duties which involved frequent travel to Puerto Rico.  This could be construed, in a literal sense, as continuing his assignment in Puerto Rico.  On the other hand, his relocation to Georgia is more naturally interpreted as the end of his assignment in Puerto Rico.  ICF no longer required him to live in Puerto Rico full-time, ceased paying for his apartment, and made changes to his tax withholding.[1]  The employment agreement defines the "assignment" as Alemañy's "temporary international assignment [] from [his] work location in the continental United States to Puerto Rico."  (Docket No. 48-2 at p. 12.)  With the onset of the pandemic, Alemañy moved back to the continental United States, with his home in Georgia serving as his primary work location.  After this move, he spent far less than 50 percent of his working time in Puerto Rico - 90 days in 2020, 44 days in 2021, and 107 days in 2022.  Therefore, the Court finds that the choice of law carve-out for Puerto Rico workers' compensation and

---

[1] The change to his tax withholding status, in particular, is notable given the employment agreement's carve-out for Puerto Rico income tax law during his assignment in Puerto Rico.  See supra p. 9.

employment discrimination laws ceased to apply after Alemañy moved back to Georgia in 2020.

Nor, in any case, does Puerto Rico law require that Alemañy receive the protections of Law 80, Law 100, and Law 115. Puerto Rico courts have recognized limits on the applicability of Commonwealth labor laws to employees who work outside of Puerto Rico. See Green Giant Co. v. Superior Court, 4 P.R. Off. Trans. 682 (1975); Almodóvar v. Margo Farms del Caribe, Inc., 148 D.P.R. 103, 99 TSPR 55 (1999); Torres-Negrón v. Merck & Co., 376 F. Supp. 2d 121, 128 (D.P.R. 2005) (Casellas, J.) (summarizing the facts and holding of Almodóvar). Although Puerto Rico courts have not considered a case where an employee regularly splits his or her time between Puerto Rico and elsewhere, employees working primarily outside of Puerto Rico generally receive the protection of Commonwealth labor laws only when they satisfy other key contacts with Puerto Rico, such as being hired by a Puerto Rican employer and being assigned to work outside of Puerto Rico only temporarily. See Torres-Negrón, 376 F. Supp. 2d at 128-29 (explaining how in Almodóvar, an employee who worked primarily (though temporarily) from the Virgin Islands for a Puerto Rican employer was protected by Puerto Rico labor laws). Alemañy, however, worked for a Virginia company, maintained a primary residence in Georgia, and only travelled for work to Puerto Rico

on an *ad-hoc* basis.  The fact that his work was substantively related to Puerto Rico may be a contact in his favor, but it is not one that the Puerto Rico courts have yet recognized as persuasive in determining whether Puerto Rico labor laws apply.

Accordingly, the Court **ADOPTS** the magistrate judge's recommendation with respect to the applicability of Puerto Rico labor law.  Although this is enough to grant ICF's motion for summary judgment, the Court will proceed to analyze the merits of his claims for completeness and because they support the same result.

### B. Puerto Rico Law 100

The Court will start with Alemañy's claims under Law 100, which can be dealt with briefly.  The magistrate judge rejected Alemañy's argument that he was discriminated against based on his age because he failed to produce direct or indirect evidence that age was a factor in any adverse employment action ICF took against him.  See Docket No. 80 at pp. 23-35.  Alemañy did not raise any objection to the magistrate judge's reasoning on his age discrimination claims.  As a result, further review of these claims has been waived.  See Davet, 973 F.2d at 30-31.  The Court has nonetheless conducted a review of the record and agrees with the magistrate judge's reasoning as to why these claims should be denied.

**C. Puerto Rico Law 115**

Next, Alemañy argues that ICF unlawfully retaliated against him in violation of Law 115. Alemañy objected to the magistrate judge's rejection of these claims by arguing that his complaint to ICF human resources in early September 2022[2] and subsequent removal ("within weeks") from his leadership role sets forth a *prima facie* claim of retaliation.  (Docket No. 82 at p. 10.)  The Court disagrees.

To establish a *prima facie* retaliation claim under Law 115, a plaintiff must initially show that "(1) he participated in a protected activity; (2) the employer took adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action." Mercado v. Hyannis Air Serv., No. 23-1744, 2025 U.S. App. LEXIS 24455, at *9-10 (1st Cir. Sept. 22, 2025); see P.R. Laws Ann. tit. 29, § 194a(c).  "[F]ederal courts have consistently treated a claim under Law 115 the same as a claim pursuant to Title VII's antiretaliation provision." Mercado, 2025 U.S. App. LEXIS 24455, at *11; see also P.R. Laws Ann. tit. 29, § 123a ("When applying the provisions of any discrimination or retaliation in the workplace law, the

---

[2] Alemañy mentions that he filed a complaint with HR in "early 2022."  See Docket No. 82 at p. 10.  Because he claims that his removal from his role occurred "within weeks" of his complaint, and because there is no evidence in the record that he complained in early 2022, the Court interprets this as a typo and reads "early *September* 2022" in its place.

provisions of federal legislation and regulations as well as the judicial interpretations thereof of courts with jurisdiction in Puerto Rico shall be recognized, in order to ensure consistency in interpretations regarding similar terms or provisions, unless the provisions of the local legislation require a different interpretation.")

It is beyond doubt that Alemañy suffered adverse employment actions. "An adverse employment action is one that affects employment or alters the conditions of the workplace, and typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (internal citation, quotation marks, and alterations omitted). Alemañy's termination in May 2023 was clearly an adverse employment action. So was his September 2022 removal, because by being taken off his projects and replaced with another worker, he was "reassign[ed] with significantly different responsibilities." Id.

Alemañy has not, however, presented any evidence that he engaged in a protected activity. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Fantini v. Salem State Coll., 557 F.3d 22, 32

Civil No. 24-1033 (FAB)                                               15

(1st Cir. 2009) (citation omitted).  "An employee has engaged in activity protected by Title VII if [he] has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII."  Id. (internal quotation marks omitted).  Alemañy claims that his September 2022 complaint qualifies as a protected activity, but there is no evidence that this complaint contained an accusation of unlawful discrimination.  Instead, all that he shows is that he complained about his reassignment.  Although he apparently expressed concern that he was being "singled out," he does not claim to have accused ICF of singling him out because of a statutorily protected characteristic, such as age.  See Docket No. 48-3 at p. 27; Docket No. 48-6 at pp. 4-5.  Therefore, Alemañy fails to present evidence showing that the September 2022 complaint was a protected activity.

Last, Alemañy fails to show a causal link between his September 2022 complaint and an adverse employment action.  With respect to his May 2023 termination, the "period of 9 months [between the two events] is too long a period to establish a causal inference based solely on temporal proximity" and he "does not provide any other evidence of causation through comments of the retaliatory mindset or any evidence that he was subject to

differential treatment between September of 2022 and his termination." Docket No. 80 at p. 39; see also Mercado, 2025 U.S. App. LEXIS 24455, at *14 (holding that "the passage of time in and of itself is not fatal to [a plaintiff's] retaliation claim," but only if "the plaintiff can link the adverse action to the protected activity sufficient to create an inference to support a causal connection"). As for his September 2022 removal, he had already received notice of his pending removal before he complained – indeed, this was what he was complaining about. Although his actual removal may have occurred after his complaint, the decision to remove him occurred before, and thus cannot have been motivated by retaliation. As the magistrate judge noted, "[c]ausation in the retaliation context moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim." (Docket No. 80 at p. 39.)

Accordingly, Alemañy fails to present evidence showing that his September 2022 complaint was a protected activity and that an adverse employment action was causally linked to his complaint. Summary judgment in ICF's favor on Alemañy's Law 115 claim is warranted.

**D. Puerto Rico Law 80**

Last, Alemañy brings a wrongful termination claim under Law 80. Law 80 "serves the purpose of protecting employees from

Civil No. 24-1033 (FAB)                                              17

arbitrary actions of the employer by providing economic remedies to discourage unjust dismissals." Ortiz-Ortiz v. Medtronic Puerto Rico Operations, Co., 209 D.P.R. 759, 770, 2022 WL 2235561, 2022 TSPR 76 (2022) (certified translation at Docket No. 72-2).  "Every employee who works for an employer for compensation, hired without a fixed term, who is wrongfully terminated shall be entitled to receive from his employer [] severance pay . . . ."  P.R. Laws Ann. tit. 29, § 185a.  "Just cause for discharge of an employee shall be understood to be that which is not based on legally prohibited reasons and on a whim of the employer."  P.R. Laws Ann. tit. 29, § 185b.  Law 80 provides a non-exclusive list of reasons constituting just cause, such as employee misconduct, poor performance, or operational reasons like closings, downsizings, and reorganizations.  Id.

Prior to 2017, Law 80 required the employer "to plead in [its] answer to the complaint the facts that led to the dismissal, and to prove that it was justified . . . ."  P.R. Laws Ann. tit. 29, § 185k (2011 archived version).  Based on this provision, courts presumed that "all dismissals are unjustified and impose[d] on the employer the burden of proving, by a preponderance of the evidence, that there was just cause for the dismissal."  Ortiz-Ortiz, 209 D.P.R. at 774.  In 2017, however, the Puerto Rico Legislature passed the Labor Transformation and Flexibility Act,

Civil No. 24-1033 (FAB)                                          18

which deleted that statutory text from Law 80.  See Labor Transformation and Flexibility Act, Act No. 4 of January 26, 2017, § 4.12. Consequently, the old reversal in burden of proof, whereby the employer had to prove its innocence, has been eliminated in favor of the civil rule default placing the burden of proof on the plaintiff.[3]

Alemañy attempts to meet this burden by arguing that his termination was based on unlawful age discrimination and retaliation.  See Docket No. 58 at p. 18.  Consequently, his Law 80 claim rises and falls with his age discrimination and retaliation arguments.  Because he fails to present evidence supporting these arguments, his Law 80 claim also fails.

**IV. Conclusion**

For the above reasons, the Court **ADOPTS** the R&R (Docket No. 80), and **GRANTS** ICF's motion for summary judgment.  (Docket No. 47.)  This case is dismissed **WITH PREJUDICE**.  Judgment shall be entered accordingly.

---

[3] To the Court's knowledge, no Commonwealth court or other court in this district has yet dealt with a Law 80 claim under the new framework, because Act 4-2017 states that "[e]mployees hired before the effective date of this act shall continue to enjoy the same rights and benefits they enjoyed before, as expressly provided in the sections thereof."  P.R. Laws Ann. tit. 29, § 121a.  As the magistrate judge notes, because Alemañy was hired in 2019, the new framework applies to his claims.  See Docket No. 80 at p. 21 n. 18.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 15, 2025.

                                      s/ Francisco A. Besosa
                                      FRANCISCO A. BESOSA
                                      SENIOR UNITED STATES DISTRICT JUDGE